_____



SO ORDERED,

*Edward Ellington*

Judge Edward Ellington
United States Bankruptcy Judge
Date Signed: March 25, 2015

The Order of the Court is set forth below. The docket reflects the date entered.
_____

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO: 14-00950-EE |
| | : | |
| | : | CHAPTER: 13 |
| | : | |
| JAMES L. MALLETT | : | |
|     Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | - - | - - - - - - - - - - - - - - - - - - - - - - - - - - - - - |
| EMBRACE HOME LOANS, INC, | : | |
|     Movant, | : | |
| | : | CONTESTED MATTER |
| vs. | : | |
| | : | |
| JAMES L. MALLETT | : | |
| SHARON MALLETT, Co-Debtor | : | |
| JAMES L. HENLEY, JR., Trustee | : | |
|     Respondents. | : | |
| | : | |

**AGREED ORDER DENYING RELIEF FROM THE AUTOMATIC STAY AS TO THE DEBTOR AND GRANTING RELIEF AS TO THE CO-DEBTOR STAY**

Embrace Home Loans, Inc, for itself, its successors and assigns (the "Movant"), filed a Motion for Relief from Automatic Stay and Co-Debtor Stay (the "Motion"(Dk #73), which was set for hearing on **March 16, 2015** (the "Hearing"). Movant seeks relief as to Debtor`s real property located in 1st District Hinds County, Mississippi, now or formerly known as 583 Sunny Orchard Ln, Clinton, MS

39056 (the "Property"), as more particularly described on the copy of the Deed of Trust attached hereto. Movant asserts that the Motion was properly served and hearing properly noticed. The parties reached an agreement as follows:

Movant shall supplement its Proof of Claim/file a Proof a Claim to include the following Bankruptcy Attorney Fees and Costs totaling $1,026.00. Debtor shall cure the following post-petition mortgage arrearages totaling $4,890.72 within 60 days of the entry of this Order:

| Description | FROM | TO | Quantity | Amount | Total |
| --- | --- | --- | --- | --- | --- |
| Missed Payment Group 1 | 06/01/2014 | 09/01/2014 | 4 | $497.75 | $1,991.00 |
| Missed Payment Group 2 | 10/01/2014 | 03/01/2015 | 6 | $484.75 | $2,908.50 |
| Bankruptcy Fees and Costs | | | 1 | $1,026.00 | $1,026.00 |
| Suspense Balance Credit | | | 1 | $-8.78 | $-8.78 |

Accordingly, by consent, it is hereby

**ORDERED** that:

Beginning on April 1, 2015, Debtor shall pay Movant all future monthly mortgage payments when due. These payments as well as the cure payments shall be sent by check, money order, or certified funds to:

LoanCare, LLC
3637 Sentara Way
Virginia Beach, VA 23452

The ongoing mortgage payments and the payments necessary to cure the post-petitionmortgage arrearage shall be governed by Strict Compliance provisions identified below. Upon delinquency by the Debtor of any sum specified herein, Movant may be permitted to recover and dispose of the Property pursuant to applicable state law only after submitting a Notice of Default (as more particularly described below) in the following manner:

(1) Counsel for Movant shall serve the Trustee, Debtors, and Debtors` counsel of record with

written notice of the specific facts of the delinquency (the "Notice of Default"); said notice may be contained in a letter, and

(2) Debtors may cure the delinquency within twenty (20) calendar days of receipt of said notice, and

(3) If Debtors fail to cure the delinquency within twenty (20) days of receipt of said written notice, the Court may enter an ex parte order modifying the automatic stay without further notice or hearing.

The Co-Debtor stay pursuant to 11 U.S.C. § 1301 is hereby MODIFIED to allow Movant to Pursue its rights and remedies against Co-Debtor. Upon completion of any foreclosure sale by Movant, all proceeds exceeding Movant's lawful debt shall be remitted promptly to the Chapter 13 Trustee.

##END OF ORDER##

Prepared and Submitted by:

/s/ Natalie Brown
Natalie Brown
MS State Bar No. 100802
Rubin Lublin, LLC
428 North Lamar Blvd, Suite 107
Oxford, MS 38655
(877) 813-0992
nbrown@rubinlublin.com
Attorney for Creditor

*Signatures continue on the following page*

Consented to by:

/s/Tylvester O.J. Goss\_\_\_\_\_
Tylvester O.(J) Goss
MS State Bar No.
Goss & Williams
1441 Lakeover Road
Jackson, MS 39213
601-981-2800
tgoss@dgwlaw.com
Attorney for Debtor

No Opposition to by:

/s/Catoria Martin MS Bar No. 103938_____
For James L. Henley, Jr.
MS State Bar No.
P.O. Box 31980
Jackson, MS 39286-1980
601-981-9100
Standing Chapter 13 Trustee

DISTRIBUTION LIST

Sharon Mallett
583 Sunny Orchard Ln
Clinton, MS 39056

James L. Mallett
P.O. Box 128
Utica, MS 39175

Tylvester O.(J) Goss
Goss & Williams
1441 Lakeover Road
Jackson, MS 39213

James L. Henley, Jr., Trustee
P.O. Box 31980
Jackson, MS 39286-1980

United States Trustee
501 E. Court Street
Suite 6-430
Jackson, MS 39201


Natalie Brown, Esq.
Rubin Lublin, LLC
428 North Lamar Blvd, Suite 107
Oxford, MS 38655

BOOK 7120 PAGE 3869



1296950

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

~~Section/Township/Range:~~
~~Return To:~~
~~Equity National Title & Closing Services, 50 Jordan St., Suite 10, East Providence, RI 02914~~

Prepared By:
Helen McInerney
Embrace Home Loans, Inc., 25 Enterprise Ctr, Newport, RI 02842
(800) 333-3004

Indexing Instructions:
Lot 287 Cherry Park Subdivision, Part 5, Hinds County, MS

State of Mississippi

DEED OF TRUST

FHA Case No.

MIN

THIS DEED OF TRUST ("Security Instrument") is made on **June 10, 2011**
The Grantor is **James L Mallett & Sharon Mallett**, Husband and Wife

("Borrower"). The trustee is **Dennis F. Hardiman, Hillsborough Cty, FL**

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc.("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Embrace Home Loans, Inc.**

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended
VMP4N(MS) (0812)
Page 1 of 10

BOOK 7120 PAGE 3870

("Lender") is organized and existing under the laws of **Rhode Island, USA**, and has an address of **25 Enterprise Center, Newport, RI 02842**

. Borrower owes Lender the principal sum of **sixty thousand ninety-five and 00/100**

Dollars (U.S. $ **60,095.00** ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **July 1, 2041**

. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in **Hinds** County, Mississippi:

See Attached Exhibit A

Parcel ID Number:
which has the address of **583 Sunny Orchard Ln** [Street]
**Clinton** [City], Mississippi **39056** [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended
VMP4N(MS) (0812)
Page 2 of 10

BOOK 7120 PAGE 3871

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended
VMP4N(MS)
Page 3 of 10

BOOK 7120 PAGE 3872

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended
VMP4N(MS) (0812)
Page 4 of 10

BOOK 7120 PAGE 3873

regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

FHA Deed of Trust with MERS-MS
VMP®
Wolters Kluwer Financial Services

FHA 4/96 Amended
VMP4N(MS)
Page 5 of 10

BOOK 7120 PAGE 3874

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended
VMP4N(MS)
Page 6 of 10

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in paragraph 13, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in Hinds County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended
VMP4N(MS) (0812)
Page 7 of 10

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider ☐ Other [specify]
☐ Planned Unit Development Rider ☐ Graduated Payment Rider

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended
VMP4N(MS)
Page 8 of 10

BOOK 7120 PAGE 3877

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    *James L Mallett* _____ (Seal)
                                  James L Mallett              -Borrower

_____    *Sharon Mallett* _____ (Seal)
                                  Sharon Mallett               -Borrower

_____ (Seal)     _____ (Seal)
                    -Borrower                         -Borrower

_____ (Seal)     _____ (Seal)
                    -Borrower                         -Borrower

_____ (Seal)     _____ (Seal)
                    -Borrower                         -Borrower

FHA Deed of Trust with MERS-MS                     PHA 4/96 Amended
VMP ®                                              VMP4N(MS) (0812)
Wolters Kluwer Financial Services                  Page 9 of 10

BOOK 7120 PAGE 3878

STATE OF MISSISSIPPI, Hinds            County ss:
    On this **10th**     day of **June**     , **2011**     , personally appeared before me, the undersigned authority in and for said County and State, the within named **James L Mallett & Sharon Mallett**

, who acknowledged that he/she/they signed and delivered the foregoing instrument on the day and year therein mentioned.
    Given under my hand and seal of office.

My Commission Expires: 7-29-2011

                                *Karen L. Gaines*
                              Notary Public   Karen L. Gaines

(Seal)



FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amend
VMP4N(MS)
Page 10 of 10

BOOK 7120 PAGE 3879

███████
583 Sunny Orchard Lane
Clinton, Mississippi 39056
James L. Mallett

### EXHIBIT A

The land and property which is situated in the County of Hinds, State of Mississippi described as follows, to-wit:

Lot 287 Cherry Park Subdivision, Part 5, a subdivision according to the map or plat thereof on file and of record in the office of the Chancery Clerk of Hinds County at Jackson, Mississippi in Plat Book 30 at Page 44, reference to which is hereby made.

For title reference see a deed from James L. Mallett and Wanda Regina Mallett recorded 5/22/97 in Book 4774, Page 614; and a Final Judgment filed 03/28/2007 in Book 6668, Page 9





2011 JUN 30 PM 2:03
BOOK 7120
PAGE 3869
EDDIE JEA
CHANCERY